2013 ND 154

**Tim BLOOMQUIST, Plaintiff and Appellant**

v.

**The GOOSE RIVER BANK, and Goose River Holding Company, Defendants and Appellees.**

No. 20130059.

Supreme Court of North Dakota.

Aug. 29, 2013.

Michael S. Montgomery (argued), and Paul R. Campbell (on brief), Fargo, N.D., for plaintiff and appellant.

Scott J. Landa (argued) and Sara R. Behrens (on brief), Grand Forks, N.D., for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Tim Bloomquist appeals from a district court summary judgment dismissing his action against Goose River Bank and Goose River Holding Company (collectively "the Bank") for breach of an alleged oral contract to loan money. We affirm, concluding the alleged oral contract is barred by the statute of frauds.

I

[¶ 2] In 2009, Bloomquist learned that certain farmland he had been renting was going to be sold at auction. Bloomquist alleges he had discussions with the president of the Bank's Hillsboro branch about obtaining a loan to purchase the property. Bloomquist claims the Bank agreed to lend him $500,000, at six percent interest with a 30–year repayment period, to purchase two quarter-sections of land. He further claims the Bank also agreed to lend an additional $250,000 on the same terms to purchase a third quarter-section of land if he sold certain beet stock that he owned.

[¶ 3] Bloomquist attended the land sale auction and was the successful bidder on three quarter-sections of land, bidding $258,795, $263,729, and $322,000, respectively, for the three quarter-sections. The total purchase price was $844,524. Bloomquist used an advance from an existing line of credit he had with the Bank to pay $84,452.40 earnest money for the sale. The Bank subsequently refused to provide the loans to complete the transactions, claiming there had never been an agreement to loan the money, and Bloomquist failed to complete the purchase of the land.

[¶ 4] Bloomquist sued the Bank, alleging breach of the oral agreement to lend the money. The Bank moved for summary judgment dismissal of Bloomquist's claims, arguing there was no valid oral agreement to loan money because there was no mutual consent and, even if there was an oral agreement, the agreement was barred by the statute of frauds. The district court held that the alleged oral agreement was barred by the statute of frauds and ordered entry of summary judgment dismissing Bloomquist's claims.

II

[¶ 5] We have outlined the standards governing summary judgment under N.D.R.Civ.P. 56:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the

evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Golden v. SM Energy Co.,* 2013 ND 17, ¶ 7, 826 N.W.2d 610 (quoting *Hamilton v. Woll,* 2012 ND 238, ¶ 9, 823 N.W.2d 754).

### III

[¶ 6] The Bank initially contends that no valid contract existed between the parties. The Bank argues that, even if the Bank president agreed to the loans as alleged by Bloomquist, there was no enforceable agreement because: (1) Bloomquist bid more for each of the three quarter-sections of land than authorized; (2) Bloomquist's corporation, not Bloomquist personally, was the purchaser of the third quarter-section of land, and the Bank never agreed to lend money to the corporation to purchase the land; and (3) Bloomquist never sold his beet stock, which was a condition for the loan for the third quarter-section of land. The Bank thus argues there was no mutual consent to the terms Bloomquist now seeks to enforce. *See* N.D.C.C. § 9–01–02(2). Because we review this case in the procedural posture of summary judgment, we view the evidence in the light most favorable to Bloomquist as the party opposing the motion and, for purposes of this appeal, we assume there was consent and an oral agreement between the parties which satisfied the requirements of N.D.C.C. § 9–01–02.

### IV

[¶ 7] Bloomquist contends the district court erred in concluding the alleged oral agreement was barred by the statute of frauds. The relevant statutory provisions are codified in N.D.C.C. § 9–06–04:

The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by the party's agent:

1. An agreement that by its terms is not to be performed within a year from the making thereof.

. . . .

4. An agreement or promise for the lending of money or the extension of credit in an aggregate amount of twenty-five thousand dollars or greater.

[¶ 8] Bloomquist does not contend that there is a writing of any kind memorializing or acknowledging the alleged agreement to loan the money. He contends, however, that there was an agreement to loan $750,000 and that, after the auction sale, the Bank "consented to" the higher amounts bid by Bloomquist, thereby extending the agreement to a total loan of $844,524. Whether the alleged agreement was for $750,000 or $844,524, it far exceeded $25,000 and constitutes "[a]n agreement or promise for the lending of money . . . in an aggregate amount of twenty-five thousand dollars or greater" which is barred by N.D.C.C. § 9–06–04(4).

[¶ 9] The agreement also by its terms is not to be performed within one year. Bloomquist alleged the loan was to be amortized and repaid over a period of thirty years, but did not allege there were any express terms for prepayment. Bloomquist described the agreement as "the standard 30–year contract at a 6 percent interest rate." In *Kohanowski v. Burk-*

*hardt,* 2012 ND 199, ¶¶ 9–13, 821 N.W.2d 740, we held that an oral loan agreement providing for repayment extending for a period longer than one year, and which does not include express terms governing prepayment, is barred by the statute of frauds under N.D.C.C. § 9–06–04(1).

[¶ 10]   In *Kohanowski* we distinguished cases such as *Delzer v. United Bank of Bismarck,* 459 N.W.2d 752 (N.D.1990) and *Bergquist–Walker Real Estate, Inc. v. William Clairmont, Inc.,* 333 N.W.2d 414 (N.D.1983), which had held the prohibition in N.D.C.C. § 9–06–04(1) applied only if it was impossible to perform the agreement within one year.   Noting that later cases had stressed that the statute applied "to any oral contract that *by its terms* is not to be performed within one year," *Kohanowski,* 2012 ND 199, ¶ 10, 821 N.W.2d 740, we explained:

> The language of N.D.C.C. § 9–06–04(1) is clear and unambiguous and applies to an agreement that "by its terms is not to be performed within a year." *Bergquist–Walker* and *Delzer* both involved broad, open-ended agreements that did not include express terms specifying a time of performance.   Thus, the agreements in those cases were capable of being performed within one year *under the express terms* of the agreements. When an oral agreement includes express terms setting specific times for performance extending beyond one year from the date of the agreement, however, it is not an agreement capable of being performed "by its terms" within one year, and it is barred by the statute of frauds.[1]

*Kohanowski,* at ¶ 10.   Because the agreement as alleged by Bloomquist by its terms was to be repaid over a period of 30 years, with no express terms for prepayment, it was barred by the statute of frauds as codified in N.D.C.C. § 9–06–04(1).

■   [¶ 11]   Bloomquist argues that, even if the alleged agreement falls within the proscriptions of N.D.C.C. § 9–06–04(1) and (4), the agreement is removed from the statute of frauds by partial performance.   Bloomquist contends he partially performed his obligations under the contract by bidding on the land, preparing purchase agreements, and paying earnest money.   He further claims the Bank partially performed by advancing the earnest money from Bloomquist's line of credit.

[¶ 12]   We have not previously applied the doctrine of partial performance to an oral agreement extending beyond one year:

> This Court has not previously applied the doctrine of partial performance to allow enforcement of an oral agreement not to be performed within one year, and has questioned its applicability in such cases:

>> This Court has previously questioned whether the doctrine of partial performance applies to an oral agreement which by its terms cannot be performed within one year and which does not involve real estate:

>>> We also observe that the general rule is that under provisions similar to Section 9–06–04(1), N.D.C.C., contracts which cannot be performed within one year are not taken out of the statute of frauds by part performance.   However, that general rule is

1.   We further note that the transaction at issue in *Delzer,* an alleged oral agreement to provide a $300,000 line of credit, predated the legislature's 1985 adoption of N.D.C.C. § 9–

06–04(4), which bars oral loan agreements exceeding $25,000.   *See* 1985 N.D. Sess. Laws ch. 139, § 1.

subject to an exception for cases involving real estate.

*Thompson [v. North Dakota Workers' Comp. Bureau],* 490 N.W.2d [248,] 252 n. 3 (citations omitted); *see* 73 Am. Jur.2d *Statute of Frauds* § 419 (2001); 37 C.J.S. *Frauds, Statute of* § 191 (2008).

*Rickert [v. Dakota Sanitation Plus, Inc.],* 2012 ND 37, ¶ 12, 812 N.W.2d 413.

*Kohanowski,* 2012 ND 199, ¶ 14, 821 N.W.2d 740. Similarly, questions have been raised whether the partial performance doctrine applies to any oral contract which does not involve real estate. *See Felco, Inc. v. Doug's North Hill Bottle Shop, Inc.,* 1998 ND 111, ¶¶ 15–16, 579 N.W.2d 576. Thus, it is uncertain whether the doctrine of partial performance may be used to remove an oral agreement to loan more than $25,000 from the statute of frauds under N.D.C.C. § 9–06–04(4). *Cf. Kuntz v. Kuntz,* 1999 ND 114, ¶¶ 10–13, 595 N.W.2d 292 (doctrine of partial performance applied to oral agreement to sell farmland and other farm assets for a specified amount with yearly payments). We find it unnecessary to decide whether an oral agreement unrelated to real estate, which is not to be performed within one year or which is for a loan in excess of $25,000, can be removed from the statute of frauds by partial performance, because we conclude Bloomquist failed to allege part performance which would be sufficient to take the oral contract out of the statute of frauds. *See Kohanowski,* at ¶ 14; *Rickert v. Dakota Sanitation Plus, Inc.,* 2012 ND 37, ¶ 12, 812 N.W.2d 413; *Felco,* at ¶¶ 15–16; *Thompson v. North Dakota Workers' Comp. Bureau,* 490 N.W.2d 248, 252 n. 3 (N.D.1992).

[¶ 13] We have clarified that, in order to remove an oral agreement from the statute of frauds, the part performance must unmistakably point to the existence of the alleged oral agreement:

To take a contract out of the statute of frauds, the party seeking to enforce the oral contract must establish part performance that is not only consistent with, but that is consistent *only* with, the existence of the alleged oral contract. As we explained in *Rickert,* at ¶ 14:

When it is alleged that partial performance removes an unwritten agreement from the statute of frauds, the most important question is whether the part performance is consistent only with the existence of the alleged oral contract. *In re Estate of Thompson,* 2008 ND 144, ¶ 12, 752 N.W.2d 624; *Fladeland v. Gudbranson,* 2004 ND 118, ¶ 8, 681 N.W.2d 431; *Johnson Farms v. McEnroe,* 1997 ND 179, ¶ 19, 568 N.W.2d 920. As further clarified in *Estate of Thompson,* at ¶ 13 (quoting *Anderson v. Mooney,* 279 N.W.2d 423, 429 (N.D.1979)): " 'Another requirement of the doctrine * * * is that the acts relied upon as constituting part performance must unmistakably point to the existence of the claimed agreement. If they point to some other relationship ... or may be accounted for on some other hypothesis, they are not sufficient.' "

*Kohanowski,* 2012 ND 199, ¶ 16, 821 N.W.2d 740 (citations omitted). Thus, to remove the alleged oral agreement from the statute of frauds, Bloomquist "would have to establish an act of partial performance that 'unmistakably point[ed] to the existence of the claimed agreement,' that was consistent *only* with the terms and existence of the alleged contract, and that could not 'be accounted for on some other hypothesis.' " *Id.* (quoting *Rickert,* 2012 ND 37, ¶ 14, 812 N.W.2d 413).

[¶ 14] The acts of part performance alleged by Bloomquist are not consistent only with the existence of the alleged oral agreement. Bloomquist argues he partially performed the oral contract by bidding on the property, preparing purchase agreements, and paying earnest money. None of those acts are consistent only with the terms and existence of the alleged oral contract, and they may be explained by other hypotheses. Bloomquist's acts would also be consistent with any scenario whereby he secured financing for the purchases from another lender or decided to purchase the land with his own funds. Furthermore, Bloomquist's acts did not constitute performance of any obligations imposed by the alleged oral agreement itself, but rather constituted performance of obligations under Bloomquist's separate contracts to purchase the land. Finally, as the Bank points out, Bloomquist's acts were not consistent with the terms of the alleged oral agreement. Bloomquist submitted bids which exceeded the amounts allegedly authorized by the Bank, and Bloomquist bid on the third parcel without selling his beet stock as required by the terms of the alleged oral agreement.

[¶ 15] Bloomquist further contends the Bank partially performed the oral agreement "by agreeing to advance the earnest money from Bloomquist's accounts at" the Bank. The advance of earnest money, however, came from a pre-existing line of credit which Bloomquist had with the Bank. Bloomquist provided no evidence suggesting the line of credit was in any way connected to the alleged oral agreement, or that he was not free to use advances from the line of credit for any expenses as he saw fit. Bloomquist had access to the funds in the pre-existing line of credit whether the alleged oral agreement existed or not. Thus, the Bank's advance of funds from the line of credit does not "unmistakably point" to the existence of an oral agreement to provide funds for the balance of the purchase price, but would also be consistent with Bloomquist obtaining the remaining funding elsewhere or funding the balance of the purchase himself. Furthermore, we again note that the alleged act of part performance did not constitute an obligation which arose from the oral agreement itself. Nothing in the alleged oral agreement required the Bank to provide earnest money from a separate, pre-existing line of credit.

[¶ 16] We conclude Bloomquist failed to present evidence of part performance sufficient to take the contract out of the statute of frauds, and the alleged oral agreement is barred by N.D.C.C. § 9–06–04(1) and (4).

## V

[¶ 17] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit. The judgment is affirmed.

[¶ 18] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.